**In Re: SPECIAL COUNSEL INVESTIGATION**

**No. 04–407 (TFH).**

United States District Court, District of Columbia.

Sept. 9, 2004.

Order unsealing Order & Memorandum Sept. 15, 2004.

See also 2004 WL 1775929.

---

***MEMORANDUM OPINION***

THOMAS F. HOGAN, Chief Judge.

Pending before the Court is Motion of Judith Miller to Quash Grand Jury Subpoenas and/or for Protective Order. The subpoenas were issued by Special Counsel Patrick Fitzgerald as part of the ongoing investigation into the potentially illegal disclosure of the identity of CIA official Valerie Plame. Ms. Miller is a journalist who

was asked to appear before the grand jury to testify regarding alleged conversations she had with a specified Executive Branch official. For the reasons set forth in this Court's July 20, 2004 Memorandum Opinion in the cases Misc. Nos. 04–296 and 04–297, as well as the additional reasons stated below, the Court denies the motion to quash.

### Background

The facts surrounding this case are outlined in the Court's Memorandum Opinion of July 20, 2004, and therefore the Court will only briefly address Ms. Miller's role in case. Judith Miller is an investigative reporter for *The New York Times.* Although Ms. Miller never wrote an article about Ambassador Joseph Wilson or his wife Valerie Plame, she contemplated writing one. In preparation, Ms. Miller spoke with one or more confidential sources regarding Ambassador Wilson's article, "What I Didn't Find in Africa." Affidavit of Judith Miller ¶¶ 1,5. The Office of Special Counsel Patrick Fitzgerald has served two subpoenas on Ms. Miller: one requesting her testimony before the grand jury regarding confidential conversations she had with a specified administration official and the other asking her to produce specific documents relating to those conversations. Government's Response to Motion to Quash Grand Jury Subpoenas ("Gov't Opp'n") at 3. As was the case with the subpoenas issued upon Mr. Cooper and Mr. Russert addressed in the Court's July 20, 2004 Opinion, the specific subject matter Special Counsel will address before the grand jury is quite circumscribed, but it does delve into alleged conversations each reporter had with a confidential source.

Ms. Miller objects to the subpoenas using the same legal arguments that were raised by Mr. Cooper and Mr. Russert and which the Court ruled upon in its July 20, 2004 Memorandum Opinion. That ruling is incorporated by reference to this case. The Court issues this Opinion, however, to address one new argument that Ms. Miller included in her Motion to Quash and asserted at the motions hearing held on September 3, 2004.

■ Before addressing that argument, the Court will first note that as was the case with Mr. Cooper and Mr. Russert, Mr. Fitzgerald submitted an *ex parte* affidavit filed under seal in this matter. Gov't Opp'n at 1. As previously held in the July 20, 2004 Opinion, this Court is not convinced that the DOJ guidelines vest any right in the movant in this case. Assuming, *arguendo,* that the DOJ guidelines did vest a right in Ms. Miller, this Court holds that the DOJ guidelines are fully satisfied by the facts of this case as presented to the court in the *ex parte* affidavit of Patrick Fitzgerald. Furthermore, assuming *arguendo* that this Court were to determine that Ms. Miller did possess a qualified privilege—a holding which the Court rejected in its July 20, 2004 Opinion—the *ex parte* affidavit has also established that Special Counsel would be able to meet even the most stringent of balancing tests. The information requested from Ms. Miller is very limited, all available alternative means of obtaining the information have been exhausted, the testimony sought is necessary for the completion of the investigation, and the testimony sought is expected to constitute direct evidence of innocence or guilt.

### Analysis

■ The Court addresses here an argument offered by Ms. Miller and further supported in the brief in support of the motion to quash submitted by eighteen major news organizations and reporters' groups appearing as amici curiae in this case. Ms. Miller points to Federal Rule of Evidence 501 and the Supreme Court's

ruling in *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), for the proposition that this Court may recognize a reporters privilege based in federal common law despite its holding that *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), establishes that there is no First Amendment or common law privilege exempting the press from testifying before a grand jury acting in good faith. Motion of Judith Miller to Quash Subpoenas and/or for Protective Order ("Miller Mot.") at 19–21.

Federal Rule of Evidence 501, enacted in 1975, states that privileges in federal criminal cases "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed.R.Evid. 501. By enacting Rule 501, Congress gave federal courts the authority to "continue the evolutionary development of testimonial privileges." *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Rule 501 provides "the courts with the flexibility to develop rules of privilege on a case-by-case basis" and" leave[s] the door open to change." *Id.* In *Jaffee v. Redmond*, the Supreme Court articulated the analysis courts should undertake when determining whether to recognize a common law privilege under Rule 501. 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

The *Jaffee* Court explained that when determining whether a privilege should be recognized, a court should begin with the fundamental maxim that the public "has a right to every man's evidence." 518 U.S. at 9, 116 S.Ct. 1923. "Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (internal citations omitted). Accordingly, a privilege can and should be recognized under Rule 501 if that privilege "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* at 9–10, 116 S.Ct. 1923. This Court acknowledges that common law testimonial privileges may be created by courts under Rule 501 and the Supreme Court's opinion in *Jaffee*.

Ths issue before the Court is whether it should recognize a reporters privilege under Rule 501 and *Jaffee*. Ms. Miller argues that the Court should recognize such a privilege. In arguing that because the Court *can* recognize a common law privilege it therefore *should* recognize a reporters privilege in this case, Ms. Miller tries to jump a chasm in two leaps.[1] Although *Branzburg* was decided three years prior to the adoption of Rule 501, the *Branzburg* Court already undertook the analysis of whether the public benefit at issue "outweigh[ed] the need for probative evidence" required under *Jaffee*. *Jaffee* 518 U.S. at 9–10, 116 S.Ct. 1923.

In *Branzburg*, the Court made clear what issue was before it stating, "The heart of the claim is that the burden on news gathering resulting from compelling reporters to disclose confidential information outweighs any public interest in obtaining the information." 408 U.S. at 681, 92 S.Ct. 2646. As previously explained in the July 20, 2004 Opinion, the *Branzburg* Court concluded that the public's interest in fighting crime outweighed any burden on news gathering that would result from requiring reporters to testify before a

---

1. Cf. "The most dangerous strategy is to jump a chasm in two leaps." Benjamin Disraeli, British politician (1804—1881).

grand jury. As the *Branzburg* Court explained:

> Fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important, constitutionally mandated role in this process ... we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.

*Id.* at 690–91, 92 S.Ct. 2646.

Ms. Miller's argument that this Court should establish a common law privilege despite the balancing test already undertaken by the Supreme Court in *Branzburg* is even less convincing in light of what precisely the *Branzburg* Court was balancing. In *Branzburg,* the Court weighed an asserted First Amendment-based protection of the press against the need for probative evidence in grand juries in order to protect society from crime. To say it differently, the Court pitted a Constitutionally-based freedom of the press against society's need to fight crime, and concluded that the need to protect society from crime was more important than the burden on news gathering. Here, Ms. Miller asks the Court to repeat the same balancing test, but instead of supporting her argument with the weighty claim of First Amendment protection, she bases it on a privilege allegedly created through case law and Rule 501. The arguments in favor of protection of the press are weaker in this context, yet Ms. Miller asks this Court to come to the opposite conclusion of the Supreme Court in *Branzburg.* This Court declines to do so.

This Court holds that Ms. Miller has no privilege, based in the First Amendment or common law, qualified or otherwise, excusing her from testifying before the grand jury in this matter. Therefore, under the holding in *Branzburg* and its progeny, Ms. Miller must fulfill her obligation, shared by all citizens, to answer a valid subpoena issued to her by a grand jury acting in good faith. An appropriate order will accompany this opinion.

### ORDER

Pending before the Court is "Motion of Judith Miller to Quash Grand Jury Subpoenas and/or for Protective Order." For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the motion is **DENIED.** It is further

**ORDERED** that the parties are to submit to the Court no later than Wednesday, September 15, 2004 a motion stating any and all elements of the accompanying Memorandum Opinion dated September 9, 2004 that they believe should be redacted before the Memorandum Opinion is made public and published. The motion shall explain the reasons the parties believe the identified portions should be redacted. The parties may submit a joint or individual motions for redactions. If the parties believe that no redactions are necessary, they shall notify the Court of this is writing no later than Wednesday, September 15, 2004.

**SO ORDERED.**

### ORDER

It is hereby

**ORDERED** that this Court's Order and Memorandum Opinion dated September 9, 2004 shall be unsealed.

**SO ORDERED.**

### ORDER

It is hereby

**ORDERED** that this Court's Order and Memorandum Opinion dated September 9, 2004 shall be unsealed.

**SO ORDERED.**